UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-1088(DSD/SRN)

Donita Stusse,

    Plaintiff,

v.  **ORDER**

Von Maur, Inc.,

    Defendant.

Michelle D. Hurley, Esq. and Yost & Baill, LLP, 220 South Sixth Street, Suite 2050, Minneapolis, MN 55402, counsel for plaintiff.

Tracy J. Van Steenburgh, Esq., Kari L. Hainey, Esq. and Halleland, Lewis, Nilan & Johnson, PA, 220 South Sixth Street, Suite 600, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon defendant Von Maur Inc.'s ("Von Maur") motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants Von Maur's motion.

**BACKGROUND**

In this disability discrimination action, plaintiff Donita Stusse ("Stusse") alleges that Von Maur failed to accommodate her pregnancy-related disability and retaliated against her for requesting accommodations. Von Maur operates retail stores in the Midwest. Stusse managed the women's shoe department at the Von Maur store in Eden Prairie, Minnesota from May 2001 to March 2007.

Thereafter, Stusse managed the men's shoe department until her termination on June 11, 2007.

Stusse is the mother of three children. During her second pregnancy in 2005, Stusse experienced two pre-syncope episodes during which she became lightheaded and one syncope episode during which she fainted and fell. (Hanno Dep. at 10.) Consequently, Stusse's physician, Dr. Myriah Hanno ("Hanno"), limited Stusse's workload and Von Maur adjusted her schedule accordingly. (Id. at 25; Ex. 4.)

Stusse became pregnant with her third child in 2007. Due to her past pre-syncope and syncope episodes, Hanno limited Stusse to working no more than five consecutive eight-hour shifts. (Id. Ex. 2.) Von Maur complied. On May 4, 2007, Stusse called Hanno's office to report feeling faint and experiencing tunnel vision. Stusse, however, did not seek further medical attention and her symptoms subsided after she ate food. (Id. at 15; Ex. 1 at 4.)

At a May 31, 2007, prenatal exam, Hanno recommended that Stusse sit on a stool when she was helping customers at work and take ten-minute breaks every two hours to alleviate swelling in her legs and prevent syncope. (Id. Ex. 3.) Stusse informed Von Maur's human resources manager Beth Glogowski ("Glogowski") of Hanno's recommendation the next day. After discussing the matter with Von Maur's director of human resources, Glogowski told Stusse that a chair would be placed in a nearby stockroom for use at her

2

convenience and that she could take a ten-minute break every two hours so long as another employee covered her duties. (Glogowski Dep. Ex. 5.) Glogowski offered to help Stusse find coverage if necessary. (Id.)

On June 6, 2007, Stusse informed Glogowski that there was still no chair in the stockroom. (Stusse Dep. at 6.) Glogowski immediately had the chair delivered. (Id. at 23.) On the morning of June 8, 2007, Stusse told Glogowski that she could not find anyone to cover her 1:00 p.m. lunch break. Glogowski found an employee who could cover for Stusse at 12:30 p.m., but Stusse declined the coverage and took her lunch break at around 1:20 p.m. (Glogowski Dep. at 73.) Later that day, Stusse expressed frustration to Glogowski over her delayed lunch and difficulty finding coverage for short breaks. (Stusse Dep. at 26, 35-36.) Glogowski was empathetic and again offered to help Stusse find coverage. (Id. at 37.)

Meanwhile, on May 31, 2007, Von Maur had conducted a routine internal audit during which loss prevention assistant, Betty Dettmann ("Dettmann"), flagged two May 25, 2007, transactions for suspicious activity. (Dettmann Aff. ¶ 3.) The transactions involved Stusse's return without the original receipts of two pairs of shoes that she had bought on sale. Stusse was refunded the original prices listed on the merchandise boxes instead of the sale

3

prices that she actually paid.[1] (Id.) Dettmann contacted the Eden Prairie store manager, Tricia Moeller ("Moeller"), about the transactions. Moeller then called the vice president of stores Melody Westendorf ("Westendorf") at Von Maur's headquarters in Davenport, Iowa, and later confirmed that Stusse signed the receipts related to the suspicious transactions. (Moeller Aff. ¶¶ 12-13.) When Moeller questioned Stusse about the transactions on June 11, 2007, Stusse offered to pay the difference and said she was unaware of the price discrepancies because she had been distracted when she made the returns. (Id. ¶¶ 15-16; Stusse Dep. at 93, 95, 124.) Moeller and Westendorf then discussed the seriousness of the transactions together with Stusse's explanation, responsibilities as a manager, knowledge of Von Maur's policy on fraud, overall work performance and long employment history. (Westendorf Aff. ¶ 14.) After the discussion, Westendorf instructed Moeller to terminate Stusse. At that time, Westendorf did not know that Stusse was pregnant or had requested accommodations. (Id. ¶ 16.)

On July 2, 2007, Stusse filed charges of discrimination against Von Maur with the Minnesota Department of Human Rights and the United States Equal Employment Opportunity Commission. After

---

[1] Stusse received $90.00 for a pair of men's sandals that she had purchased nine months earlier for $23.00 and $30.00 for a pair of women's shoes that she had purchased six weeks earlier for $15.00. (Id. ¶¶ 2-3.)

4

receiving right to sue letters in March 2008, Stusse commenced the instant action on April 13, 2008, alleging claims of failure to accommodate and retaliation under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). Von Maur now moves for summary judgment.

**DISCUSSION**

**I. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See

Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Failure to Accommodate**

The ADA and MHRA require employers to provide reasonable accommodations to disabled employees. 42 U.S.C. § 12112(b)(5)(A); Minn. Stat. § 363A.08, subdiv. 6. An employee establishes a violation of this duty by showing she is a qualified individual with a disability and the employer knew of the disability but did not provide reasonable accommodations. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (8th Cir. 2005) (ADA); Liljedahl v. Ryder Student Transp. Servs. Inc., 341 F.3d 836, 841 (8th Cir. 2003) (MHRA). A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). An individual is disabled under the MHRA if she "'has a physical, sensory, or mental impairment which materially limits one or more major life activities.'" Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 543 (Minn. 2001) (quoting Minn. Stat. § 363.01, subdiv. 13 (2000)). A "material limitation" is less stringent than a "substantial limitation." Id. at 543 n.5. Nevertheless, the relevant ADA regulations aid a court in

6

determining whether an impairment materially limits a major life activity under the MHRA. Mallon v. U.S. Physical Therapy, Ltd., 395 F. Supp. 2d 810, 817 n.1 (D. Minn. 2005).

Major life activities are those "that are of central importance to most people's lives." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002). These include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, thinking and concentrating. See Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (citing 29 C.F.R. § 1630.2(I) (2006)); Battle v. United Parcel Serv., Inc., 438 F.3d 856, 861 (8th Cir. 2006) (citations omitted). A substantial limitation exists if "an individual 'is significantly restricted as to the condition, manner or duration under which ... the average person in the general population can perform the same major life activity.'" Gretillat, 481 F.3d at 652 (quoting 29 C.F.R. 1630.2(j)(1)(ii)). To determine whether an individual is substantially limited, a court considers the impairment's nature and severity, duration or expected duration and expected permanent or long term impact.[2] 29 C.F.R. § 1630.2(j)(2).

---

[2] An amendment to the ADA effective January 1, 2009, expressly abrogated the narrow construction of "substantial limitation." ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554. Stusse does not argue for retroactive application of the amendment, and the court determines that retroactive application is not warranted. See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (no retroactive application of legislation if it "would impair rights a party possessed when he acted, increase
(continued...)

Only severe and long-lasting pregnancy-related complications constitute a disability under the ADA. See Gorman v. Wells Mfg. Corp., 209 F. Supp. 2d 970, 976 (S.D. Iowa 2002); Remick v. Lake State Indus., Inc., Civ. No. 07-1033, 2009 WL 205213, at *15 (D. Minn. Jan. 27, 2009); see also Deneen v. Nw. Airlines, Inc., 132 F.3d 431, 434 (8th Cir. 1998) (woman with pregnancy-induced hypertension not disabled under MHRA).

Stusse contends that her experience and risk of pre-syncope and syncope episodes during pregnancy substantially limited her ability to perform the major life activities of maintaining consciousness, standing and working. Stusse, however, reported only one episode of pre-syncope during her 2007 pregnancy that did not require medical attention. Furthermore, according to Hanno, pregnant women commonly experience pre-syncope and syncope, and Stusse's pregnancy progressed normally. (Hanno Dep. at 10, 12, 22-24.) Therefore, this is not one of the "'extremely rare circumstances' wherein pregnancy with complications can predicate a disability claim under the ADA." See Gorman, 209 F. Supp. 2d at 977 (quoting Minott v. Port Auth. of N.Y. & N.J., 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000)). Accordingly, summary judgment is warranted on this claim.

---

[2](...continued)
a party's liability for past conduct, or impose new duties with respect to transactions already completed"); see also Elbert v. True Value Co., 554 F.3d 690, 692 (8th Cir. 2008) (presumption against retroactive application of legislation).

## III. Retaliation

Although Stusse's failure to accommodate claim fails, she "may still pursue a retaliation claim under the ADA as long as [she] had a good faith belief that the requested accommodation was appropriate." Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003) (quotations omitted). A court applies McDonnell Douglas's burden-shifting analysis to retaliation claims under the ADA and MHRA in cases such as this where there is no direct evidence of discriminatory or retaliatory intent. See Baucom v. Holiday Cos., 428 F.3d 764, 766 (8th Cir. 2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Under McDonnell Douglas, the plaintiff must first establish a prima facie case. Baucom, 428 F.3d at 766. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the defendant satisfies its burden, the plaintiff must show that the defendant's reason is pretext for unlawful discrimination. Id. at 766-67. Pretext can be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

To establish a prima facie case of retaliation under the ADA and MHRA, Stusse must show that she "engaged in a protected activity, suffered an adverse employment action, and that there is

9

a causal connection between the two." Heisler, 339 F.3d at 632. Requesting an accommodation is a protected activity and termination of employment is an adverse action. Id. Furthermore, the temporal proximity between Stusse's June 6 and 8 discussions with Glogowski about her accommodations and her June 11, 2007, termination permits an inference of causation. See Mitchell v. Iowa Prot. & Advocacy Servs., 325 F.3d 1011, 1014 (8th Cir. 2003) (close temporal proximity may permit causal inference).

As a legitimate nondiscriminatory reason for terminating Stusse, Von Maur maintains that her May 25, 2007, transactions were grounds for termination as "fraudulent activities" under its code of conduct. (Haun Aff. Ex. B.) Stusse responds that Von Maur's explanation is pretextual because (1) Von Maur's return policy authorized the May 25, 2007, returns, (2) Von Maur did not terminate or discipline Gordon Bird ("Bird") - the sales clerk who issued Stusse the refunds and (3) Von Maur did not follow its usual termination procedures by delaying her termination until June 11, 2007, and not marking "employee dishonesty" on her termination form.

First, Von Maur allows customers, as well as employees, to return purchases without an original receipt and to be refunded the price listed on the merchandise tag or box. (Bird Dep. at 43;

Glogowski Dep. at 50; Moeller Dep. at 15.)[3]  Von Maur permits such a refund even if the customer originally purchased the merchandise at a sale price that was less than the price listed on the tag or box.  (Bird Dep. at 43; Glogowski Dep. at 50; Moeller Dep. at 15.) Von Maur, however, also requires employees to ensure that their purchases and returns are correct in order to deter internal theft. (Haun Dep. at 70;  Moeller Dep. at 21-23, 27, 46-47, 71-72.) Moreover, Stusse, as the manager of the shoe department where she made the returns, was held to a particularly high level of responsibility.  (Westendorf Aff. ¶ 14.)  Second, it is Von Maur's policy, to maintain employee privacy by questioning only those persons who are suspected of dishonesty.  (Haun Dep. at 74-75; 84-85.)  In this case, there was no evidence that Bird colluded with Stusse in the fraudulent transactions or knew that Stusse had originally paid a lower price for the shoes.  (Westendorf Aff. ¶ 13.)  Lastly, Von Maur terminated Stusse as soon as it learned of the suspicious transactions and conducted an appropriate investigation, noting on her termination form that she had "violated company rules."  (Moeller Dep. at 55.)  Indeed, after completion of the investigation, Westendorf instructed Moeller to terminate Stusse without knowing that Stusse had requested accommodations.  Thus, there was nothing suspicious about the

---

[3] Because neither party submitted the relevant deposition testimony as an exhibit, the court relies on the testimony cited in Stusse's brief.

11

termination process.  Therefore, the court determines that Stusse has not shown that Von Maur's proffered explanation for her termination is pretext for unlawful discrimination, and summary judgment on this claim is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 15] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 23, 2009

s/David S. Doty\
David S. Doty, Judge\
United States District Court
